IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PARALYZED VETERANS OF AMERICA, 801 Eighteenth St. N.W., Washington, D.C. 20006, GENE A. CRAYTON, 145 Dauphin Lane, Florissant, Missouri 63033, and CRAIG F. ENENBACH, 1360 S. 156th Court, #109, Omaha, Nebraska 68130-2576,<br><br>Plaintiffs,<br>v.<br><br>SHK MANAGEMENT, INC., A PENNSYLVANIA CORPORATION, D/B/A KORMAN COMMUNITIES, INC., 2 Neshaminy Interplex, Trevose, Pennsylvania 19053-6933, WASHINGTON H STREET ASSOCIATES, LLC, A DELAWARE COMPANY, c/o Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808, and KCI INVESTMENT COMPANY, LLC, A PENNSYLVANIA COMPANY, 2 Neshaminy Interplex, Trevose, Pennsylvania 19053-6933.<br><br>Defendants. | Civil Action No. |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR COMPENSATORY DAMAGES

Plaintiffs Paralyzed Veterans of America ("PVA"), Gene A. Crayton, and Craig F. Enenbach, by their attorneys Bingham McCutchen LLP, as and for their Complaint against defendants SHK Management, Inc., d/b/a Korman Communities, Inc. ("Korman"), Washington H Street Associates, LLC ("WHS"), and KCI Investment Company, LLC ("KCI"), (collectively "Defendants"), allege as follows:

### NATURE OF THE ACTION

Plaintiffs bring this action under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181 *et seq.*, to secure permanent equitable relief, including without limitation injunctive relief in the form of architectural alterations, in connection with Defendants' discrimination against Plaintiffs and other individuals with disabilities. Defendants have discriminated and continue to discriminate against Plaintiffs by failing to ensure that Defendants' place of lodging is accessible to individuals who require wheelchairs for mobility. As a result, Plaintiffs seek an injunction ordering Defendants to alter the place

1

of lodging to comply with the law. Further, Defendants have willfully and intentionally disregarded and refused Plaintiff PVA's requests for modifications, and Plaintiffs accordingly seek compensatory damages as permitted by the applicable statutes and regulations, as well as costs, attorneys' fees, and such other and further relief as this Court deems just and proper.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action under 28 U.S.C. § 1331 and 28 U.S.C. § 1343 because it arises under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*, and is commenced to redress the deprivation of rights, privileges and immunities secured by, *inter alia*, the ADA, which provides for equal rights of individuals with disabilities. This Court has supplemental jurisdiction over any claims based on District of Columbia law under 28 U.S.C. § 1367.

2. The Court has personal jurisdiction over Defendants because PVA's claim arises from Defendants' owning and/or renting hotel suites located in the District of Columbia. Defendants thus transact business and have an interest in property in the District of Columbia within the meaning of D.C. Code §§ 13-423(a)(1), 13-423(a)(5).

3. Venue is proper in this Court under 28 U.S.C. § 1391 because the events giving rise to this action occurred in this judicial district and because Defendants are subject to personal jurisdiction in this judicial district.

## PARTIES

4. Plaintiff PVA is a nonprofit corporation with its corporate headquarters and principal place of business at 801 Eighteenth St. NW, Washington, District of Columbia. PVA is a highly respected, congressionally chartered national veterans' service organization founded in 1946 to defend the interests of the more than 100,000 veterans who suffer from spinal cord injuries or disease. 36 U.S.C. § 170101 *et seq.* PVA's membership consists of more than 20,000 qualified individuals with disabilities as defined by the ADA, the vast majority of whom depend on wheelchairs as their primary means of mobility. 42 U.S.C. § 12102(2)(A). PVA promotes and funds spinal cord research, provides scholarships, performs community service, and lobbies for equal access and improved quality of life for individuals with disabilities. PVA's headquarters is less than one block from Defendants' place of

lodging. PVA's officers, members, and employees who use wheelchairs for mobility want to stay at Defendants' place of lodging when visiting PVA's headquarters, but are unable to do so because Defendants' place of lodging is inaccessible to people who use wheelchairs. PVA and its members have suffered direct and indirect injury as a result of Defendants' conduct described herein. Defendants' failure to comply with the ADA and other accessible design standards adversely affects individuals with disabilities, including PVA's officers, members, and employees, denying them full and equal enjoyment of goods, accommodations, facilities, services, advantages, and privileges. Defendants' actions or inactions preclude equal access and impair the quality of life of persons with disabilities, adversely affecting PVA's organizational purpose.

5. Plaintiff Gene A. Crayton is a natural person and a resident of the State of Missouri. He is a U.S. Navy combat veteran. Due to a physical disability, Crayton relies on an electric wheelchair for mobility. Crayton is a member of PVA's Board of Directors and is its national Senior Vice President. He visits Washington, D.C. at least six times per year for meetings at PVA's national headquarters. Crayton is aware of the accessibility barriers at Defendants' place of lodging and wants to patronize Defendants' place of lodging, but cannot do so while he is denied meaningful access due to its inaccessible design.

6. Plaintiff Craig F. Enenbach is a natural person and a resident of the State of Nebraska. He is a United States Air Force veteran. Due to a physical disability, Enenbach relies on a wheelchair for mobility. Enenbach is a member of PVA's Board of Directors and its national Treasurer. He visits Washington, D.C. at least six times per year for meetings at PVA's national headquarters. Enenbach is aware of the accessibility barriers at Defendants' place of lodging and wants to patronize Defendants' place of lodging, but cannot do so while he is denied meaningful access due to its inaccessible design.

7. On information and belief, defendant SHK Management, Inc., also d/b/a Korman Communities, Inc., is a corporation organized under the laws of Pennsylvania, with its corporate office at 450 Plymouth Road, Suite 300, Plymouth Meeting, Pennsylvania, and its principal place of business at 2 Neshaminy Interplex, Trevose, Pennsylvania.

8. On information and belief, defendant Washington H Street Associates, LLC is a limited liability company organized under the laws of Delaware, with its corporate offices at 450 Plymouth Road, Suite 300, Plymouth Meeting, Pennsylvania. On information and belief, WHS owns the building located at 1710 H Street NW, Washington, District of Columbia.

9. On information and belief, defendant KCI Investment Company is a limited liability company organized under the laws of Pennsylvania, with its corporate offices and principal place of business at 2 Neshaminy Interplex, Trevose, Pennsylvania.

## FACTS COMMON TO ALL CLAIMS

**Korman Communities DC**

10. On information and belief, Defendants, either collectively or individually, own and/or operate a hotel commonly known as Korman Communities DC ("KCDC") located at 1710 H Street NW, Washington, District of Columbia. KCDC is located less than one block from PVA's national headquarters. KCDC consists of common areas that include a fitness center, business center, and conference center, and 101 to 150 suites with a maximum size of two bedrooms.

11. Suites at KCDC can be reserved and rented by any member of the general public by various means, including by using an internet-based reservation system.

12. According to its own advertising, the Project provides "resort amenities," including housekeeping services, free local phone service, complimentary continental breakfast, and "Aveda bath products."

13. On information and belief, KCDC, including without limitation every common area and every suite, was constructed after January 26, 1992 and first occupied after January 26, 1993, and/or altered after January 26, 1992 in a manner that affected or could have affected its usability.

14. On information and belief, KCDC is not readily accessible to or usable by individuals with disabilities who require the use of wheelchairs for mobility, as required by the ADA and the District of Columbia Code. See 42 U.S.C. §§ 12182-89; D.C. Code § 2-1402.31(a)(1); D.C. Mun. Regs. Tit. 12A, §§ 1103.1, 1107.1, 1107.2, 1107.6. KCDC fails in numerous respects to comply with the Department of Justice's regulations implementing Title

4

III of the ADA, 28 C.F.R. pt. 36, App. A ("ADAAG"), the D.C. Building Code, D.C. Mun. Regs. Tit. 12A ("Building Code"), and the ANSI Standard for Accessible and Usable Buildings and Facilities, ICC/ANSI A117.1-1998 ("ANSI"), (collectively the "Standards").

15.    On information and belief, KCDC does not include any suites designed or designated for use by individuals with disabilities who require the use of wheelchairs for mobility. Every KCDC suite suffers from, *inter alia*, inaccessible clearance to open entry door from within each suite, inaccessible doors inside the suites, inaccessible kitchens inside the suites, and inaccessible bathrooms inside the suites.

**Enenbach and Crayton Attempt to Stay at KCDC**

16.    On November 8, 2006, Enenbach arrived at KCDC with his wife, who also relies on a wheelchair for mobility, having previously reserved a room. Upon checking in, Enenbach asked whether their assigned room was wheelchair accessible and whether the bathroom had a roll-in shower. The Enenbachs were told that KCDC has no wheelchair accessible rooms. Enenbach asked to see their assigned room to determine whether they could use it. He examined the room and, while parts of the room were spacious and permitted maneuverability, other parts, including the bathroom, were inaccessible. The Enenbachs were unable to use the room because it was inaccessible.

17.    On November 8, 2006, Crayton arrived at KCDC with his wife, having previously reserved a room. Upon checking in, Crayton requested an accessible room and was told that there were no accessible rooms, but the rooms were very nice. Crayton and his wife went to their assigned room to determine whether they could use it. They examined the room and, while it was attractive, Crayton was unable to use the room because it was inaccessible.

18.    Examples of the failures of KCDC to comply with the Standards include, but are not limited to, the items set forth below.

**Doors in the Suites and in KCDC are Inaccessible**

19.    On information and belief, the entrance doors to the suites are too close to an adjacent wall to allow a wheelchair user to operate them easily from inside the suites. The

entrance doors fail to provide at least 18" maneuvering clearance from the jamb edge to the nearest wall on the interior (pull) side. See ADAAG 4.13.6; ICC/ANSI A117.1 § 404.2.4.

20. On information and belief, all doors within the suites are too narrow to accommodate a wheelchair. Doors in the suites have less than 32" minimum clear width between the face of the door and the opposite stop with the door open 90 degrees. See ADAAG 4.13.5; ICC/ANSI A117.1 § 404.2.4.

21. On information and belief, the door hardware in the suites, including without limitation handles, latches, pulls and locks, is not easy to grasp with one hand or requires twisting of the wrist to operate, which is difficult or impossible for individuals with limited manual dexterity, including many individuals with paraplegia or quadriplegia. See ADAAG 4.13.9; ICC/ANSI A117.1 § 404.2.7.

**Kitchens in the Suites are Inaccessible**

22. On information and belief, kitchens in the suites provide insufficient floor space for a wheelchair user to maneuver to access the counters and appliances. The counters in the suites provide insufficient clear floor space for approaches to the counters and appliances. See ADAAG 9.2.2(7); ICC/ANSI A117.1 § 1002.12.1.2

23. On information and belief, the kitchen countertops and sinks in the suites are mounted too high, and the sinks are too far from the edge of the counters, to be reached or used effectively by wheelchair users. See ADAAG 9.2.2(7); ICC/ANSI A117.1 § 1002.12.3.

**Bathrooms in the Suites are Inaccessible**

24. On information and belief, bathrooms in the suites fail to provide sufficient turning space for a wheelchair. The bathrooms in the suites provide an area approximately 36" by 48", which is obstructed by the inswinging door. An average wheelchair requires approximately 60" to turn in a full circle. See ADAAG 4.23.3; ICC/ANSI A117.1 § 603.2.1.

25. On information and belief, the doors to the bathrooms in the suites swing into the clear floor space required for fixtures, including without limitation the toilet and lavatory. See ADAAG 4.23.2; ICC/ANSI A117.1 § 603.2.3.

26. On information and belief, the suites' bathrooms fail to provide sufficient floor space in front of the water closets for wheelchair users to maneuver and use the water closets.

The suites provide a maximum of 48" by 60" clear floor space in front of the water closets, insufficient to accommodate a person in a wheelchair for a forward approach. See ADAAG 4.16; ICC/ANSI A117.1 § 604.3.

27.  On information and belief, bathrooms in the suites fail to provide grab bars behind and beside the water closets. See ADAAG 4.16.4; ICC/ANSI A117.1 § 604.5.

28.  On information and belief, the suites fail to provide enough clear floor space in front of the bathroom lavatories for individuals in wheelchairs to maneuver and use the lavatories. The clear floor space in front of lavatories in the suites is less than 30" by 48", insufficient to accommodate a person in a wheelchair. See ADAAG 4.19.3; ICC/ANSI A117.1 § 606.2.

29.  On information and belief, the suites fail to provide knee and toe clearance beneath the lavatory fixtures as required by wheelchair users. See ADAAG 4.19.2; ICC/ANSI A117.1 § 606.2.

30.  On information and belief, lavatories in the suites are equipped with faucets that are not operable with one hand or without pinching or twisting of the wrist. See ADAAG 4.27.4; ICC/ANSI A117.1 § 309.

31.  On information and belief, the bathrooms in the suites fail to provide sufficient floor space to permit a wheelchair user to transfer into the bathtub. ADAAG 4.20.2, ICC/ANSI A117.1 § 607.2.

32.  On information and belief, the bathrooms in the suites fail to provide either in-tub seats or seats at the head of the tub. ADAAG 4.20.3, ICC/ANSI A117.1 § 607.4.1.

33.  On information and belief, the bathrooms in the suites fail to provide grab bars to assist a wheelchair user to transfer into the bathtub. ADAAG 4.20.4; ICC/ANSI A117.1 § 607.4.

34.  On information and belief, the bathrooms in the suites fail to provide controls (lavatory and bath) that are operable with a closed fist and do not require grasping and/or twisting. ADAAG 4.20.5; ICC/ANSI A117.1 § 607.5.

35.  On information and belief, the bathrooms in the suites obstruct a transfer from a wheelchair into the tub. ADAAG 4.20.7, ICC/ANSI A117.1 § 607.7.

36. On information and belief, the bathrooms in the suites fail to provide any roll-in showers. ADAAG 9.1.2; ICC/ANSI A117.1 § 608.2.2.

### FIRST CAUSE OF ACTION
### (Americans with Disabilities Act)

37. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 36 as though fully set forth herein.

38. Title III of the ADA, 42 U.S.C. § 12181 *et seq.*, provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

39. KCDC is a place of lodging and a place of public accommodation as defined by the ADA. 42 U.S.C. § 12181(7)(A).

40. Operation of KCDC affects commerce.

41. Defendants have discriminated against Plaintiffs on the basis of disability. Defendants' discriminatory conduct includes but is not limited to:

   a. Discriminatory exclusion and/or denial of goods, services, facilities, privileges, advantages, accommodations, and/or opportunities;

   b. Provision of goods, services, facilities, privileges, advantages, and/or accommodations that are not equal to those afforded non-disabled individuals;

   c. Failing to make reasonable modifications in policies, practices, and/or procedures as necessary to afford the goods, services, facilities, privileges, advantages, and/or accommodations to individuals with disabilities;

   d. Failing to design and/or construct KCDC so that it is readily accessible to and usable by individuals with disabilities who require the use of wheelchairs for mobility; and

   e. Failing to make alterations in such a manner that, to the maximum extent feasible, the altered suites and altered portions of KCDC are readily

accessible to and usable by individuals with disabilities, including individuals who use wheelchairs.

42. The Department of Justice has dictated the minimum standards of accessibility required by the ADA, set forth in the ADA Standards for Accessible Design, 28 C.F.R. Pt. 36 App. A (2005).

43. On information and belief, KCDC must include seven (7) ADA-compliant suites, two (2) of which must be equipped with roll-in showers, to comply with the ADA Standards. 28 C.F.R. Pt. 36 App. A § 9.1.2 (2005).

44. On information and belief, none of the suites at KCDC comply with the ADA, as detailed more fully above.

45. Alteration of KCDC to fully comply with the ADA is feasible, would not fundamentally alter the nature of KCDC, including without limitation the facilities, services and accommodations it offers, and would not result in an undue burden on Defendants.

46. Prior to filing this Complaint, Plaintiff PVA proposed and recommended to Defendants alterations that would bring KCDC into compliance with the ADA.

47. Despite Plaintiff PVA's requests and the clear requirements of the ADA, Defendants have refused to make modifications or employ alternative methods to afford individuals with disabilities equal access to and enjoyment of KCDC.

48. As such, Defendants discriminate and, in the absence of injunctive relief requested herein, will continue to discriminate against Plaintiffs and other individuals with disabilities on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of KCDC in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*, and/or its implementing regulations.

49. Defendants' failure to comply with the ADA has resulted and will continue to result in harm to Plaintiffs and other individuals with disabilities, unless and until Defendants are ordered by this Court to make modifications to KCDC pursuant to the ADA and ADAAG.

50. Defendants have failed to make any efforts or attempts to comply with the ADA.

51. Pursuant to the rights, remedies, and procedures set forth in 42 U.S.C. § 12188, Plaintiffs pray for judgment as set forth below.

## SECOND CAUSE OF ACTION
### (District of Columbia Human Rights Act)

52. Plaintiff realleges and incorporates by reference paragraphs 1 through 51 as though fully set forth herein.

53. Defendants are subject to the provisions of the D.C. Human Rights Act of 1977, D.C. Code § 2-1400 *et seq.*, ("DC Human Rights Act"), because they transact business in the District of Columbia through KCDC.

54. The conduct alleged herein violates the DC Human Rights Act, including D.C. Code § 2-1402.31(a)(1).

55. The DC Human Rights Act provides that individuals with disabilities are entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodations in the District of Columbia. D.C. Code § 2-1402.31(a)(1).

56. KCDC is a place of public accommodation. D.C. Code § 2-1401.02(24).

57. Defendants have violated and continue to violate the DC Human Rights Act by, *inter alia*, denying Plaintiffs full and equal accommodations, advantages, facilities, privileges, or services of KCDC.

58. Defendants' conduct has harmed Plaintiffs and will continue to harm Plaintiffs unless and until Defendants are ordered by this Court to make KCDC accessible to individuals who depend on wheelchairs for mobility.

59. In doing the acts and/or omissions alleged herein, Defendants have acted willfully, intentionally, and with full knowledge of the discriminatory effects of their conduct on Plaintiffs and other individuals with disabilities.

60. As a result of Defendants' wrongful conduct, this Court should award Plaintiffs compensatory damages and their attorneys fees and costs as permitted by D.C. Code §§ 2-1403.16 and 2-1403.13.

61. Pursuant to the remedies, rights, and procedures set forth in D.C. Code §§ 2-1403.16(b), 2-1403.7 and 2-1403.13, Plaintiffs pray for judgment as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that judgment be entered in their favor as follows:

a. On the First Cause of Action:

   (i) Declaring Defendants to be in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*; and

   (ii) Issuing a preliminary and permanent injunction ordering Defendants to:

   (A) alter KCDC to make it readily accessible to and usable by individuals with disabilities who require the use of wheelchairs for mobility to the extent required by the ADA and the ADAAG;

   (B) modify its practices, policies and procedures to secure full and equal enjoyment of KCDC to individuals with disabilities who require the use of wheelchairs for mobility; and

   (C) employ alternative methods to afford full and equal enjoyment of KCDC to individuals with disabilities who require the use of wheelchairs for mobility.

b. On the Second Cause of Action:

   (i) Declaring Defendants to be in violation of § 2-1402.31(a)(1) of the D.C. Human Rights Act of 1977;

   (ii) Issuing a preliminary and permanent injunction ordering Defendants to extend full, equal and unsegregated accommodations, advantages, facilities, and privileges in KCDC to individuals with disabilities in general and wheelchair users in particular; and

(iii) Ordering Defendants to pay compensatory damages in amount appropriate to the proof at the trial;

c. Awarding recovery of costs and expenses, including reasonable attorneys fees, incurred by Plaintiffs in the prosecution of this action; and

d. Such other and further relief as this Court deems just, proper, and equitable.

### DEMAND FOR JURY TRIAL

Plaintiffs, by counsel and pursuant to Federal Rule of Civil Procedure 38(b), hereby demands a trial by jury on all claims so triable in this action.

Dated: Washington, D.C.
December 14, 2006

BINGHAM McCUTCHEN LLP

By: _____
Gerard P. Finn (Bar No. 448462)
2020 K Street, NW
Washington, DC 20007
Tel: (202) 373-6000

Douglas T. Schwarz (*pro hac vice* admission applied for)
Ted Poretz (*pro hac vice* admission applied for)
399 Park Avenue
New York, New York 10022
Tel: (212) 705-7000

*Attorneys for Plaintiffs*
*Paralyzed Veterans of America, Gene A. Crayton, and Craig F. Enenbach*

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

## I (a) PLAINTIFFS

Paralyzed Veterans of America, Gene A. Crayton and Craig F. Enenbach

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Washington, DC
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Gerard P. Finn (Bar No. 448462)
Bingham McCutchen LLP
2020 K Street, NW
Washington, D.C. 20006-1806 (202)373-6097

## DEFENDANTS

SHK Management, Inc., Washington H Street Associates, Inc., KCI Investment Company, LLC

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY) _____
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ● 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ○ A. Antitrust
- ☐ 410 Antitrust

### ○ B. Personal Injury/Malpractice
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

### ○ C. Administrative Agency Review
- ☐ 151 Medicare Act

**Social Security:**
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

**Other Statutes**
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ○ E. General Civil (Other)   OR   ○ F. Pro Se General Civil

**Real Property**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**Personal Property**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**Bankruptcy**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**Property Rights**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**Federal Tax Suits**
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**Other Statutes**
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☒ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

## V. ORIGIN

⦿ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
42 U.S.C. 12181 et seq. - require architectural alterations to Defendants' hotel and modification of discriminatory practices, policies and procedures.

## VII. REQUESTED IN COMPLAINT
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ _____   Check YES only if demanded in complaint
JURY DEMAND:  YES ☒  NO ☐

## VIII. RELATED CASE(S) IF ANY
(See instruction)  YES ☐  NO ☒  If yes, please complete related case form.

DATE 12/14/06   SIGNATURE OF ATTORNEY OF RECORD _[signature]_

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.